**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| ROBERT BUSH, |
|       Plaintiff/Counter-Defendant, |
|       v. |
| NATIONAL NEWSPAPER PUBLISHERS ASSOCIATION, |
|       Defendant/Counter-Plaintiff. |

Civil Action No. 1:10-cv-00931 (RLW)

## MEMORANDUM OPINION[1] GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant/Counter-Plaintiff National Newspaper Publishers Association ("NNPA") has moved for partial summary judgment on Count II of its Counterclaim, seeking reimbursement in the amount of $32,706.06 for alleged overpayments of commissions that Bush received from NNPA. See Fed. R. Civ. P. 56. For the reasons set forth briefly below[2], NNPA's motion for partial summary judgment shall be granted.

---

[1] This is a summary opinion intended for the parties and those persons familiar with the facts and arguments set forth in the pleadings; not intended for publication in the official reporters.

[2] Rule 56(a) was amended in 2010 to require the trial court to "state on the record the reasons for granting or denying the motion [for summary judgment]." The Advisory Committee Notes to the amendment point out that "[t]he form and detail of the statement of reasons are left to the court's discretion" and that "[t]he statement on denying summary judgment need not address every available reason." Prior to the 2010 amendments, detailed rulings on summary judgment motions were generally not required by the federal rules or by the law of our Circuit, even when granting summary judgment, since the trial court makes no actual factual findings and the legal ruling is reviewed *de novo*. See, e.g., Summers v. Department of Justice, 140 F.3d 1077, 1079-80 (D.C. Cir. 1998) (stating general rule, but creating an exception for Freedom of Information Act cases due to particular statutory requirements); Randolph-Sheppard Vendors of America, Inc. v. Harris, 628 F.2d 1364, 1368 (D.C. Cir. 1980); Gurley v. Wilson, 239 F.2d 957, 958 (D.C. Cir. 1956).

NNPA entered into an independent contractor agreement ("Agreement") with Bush on July 28, 2008. The terms of the Agreement outlined Bush's duties and responsibilities to NNPA and established the terms of his compensation. Bush's primary duties included the solicitation and servicing of advertisement placement accounts on behalf of NNPA. The Agreement provided for annual base compensation as well as commissions on accounts that Bush obtained or serviced during the term of his employment. With regard to commissions, Bush was to be paid a 2.5% commission on receipts from current business accounts and a maximum 5.0% commission on New Accounts[3].

It is undisputed that NNPA paid Bush at a 5% commission rate for receipts that NNPA received from three accounts: Fuse Inc. ("Fuse"), Uniworld Group ("Uniworld"), and Burrell. It is also undisputed that NNPA had received receipts from Fuse, Uniworld, and Burrell prior to July 28, 2007.

However, NNPA claims that it erroneously overpaid Bush commissions on receipts received from Fuse, Uniworld, and Burrell, because those accounts were not entitled to the 5% commission rate. NNPA contends that, because NNPA maintained these accounts prior to one year before the date of the Agreement (July 28, 2008), these accounts were not New Accounts under the Agreement and Bush was not entitled to receive a 5% commission on receipts from these accounts.

"Summary judgment is appropriate if there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law"; a genuine issue exists "only if a reasonable jury could return a verdict for the nonmoving party." Taylor v. Small, 350 F.3d 1286,

---

[3] The Agreement defines the term "New Accounts" as follows: "New Accounts are Accounts that Company does not receive receipts from prior to the commencement of this Agreement, or Accounts that Company has received new receipts from within one year preceding the date of this Agreement." (Docket No. 24 Ex. A at 3).

1290 (D.C. Cir. 2003) (internal quotes omitted).  In the context of a contract dispute, "summary judgment is appropriate where a contract is unambiguous since, absent such ambiguity, a written contract duly signed and executed speaks for itself and binds the parties without the necessity of extrinsic evidence."  Angulo v. Gochnauer, 772 A.2d 830, 834 (D.C. 2001).

The Agreement's compensation provisions are unambiguous.  Segar v. Mukasey, 508 F.3d 16, 22 (D.C. Cir. 2007) ("[t]he question whether a contract provision is ambiguous is a question of law.").  The Agreement defines "Account" [4] as "advertising placement and sales accounts." (Docket No. 24 Ex. A at 1).  The contract specifies that the commission and compensation systems were designed to pay Bush for the "servicing of Accounts."  Id. at 4.  The contract also distinguishes between "the procuring of sales" and the "servicing of Accounts."  Id.  This is further evidence that the plain meaning of "Account" is the advertising agency that purchases the ad, rather than the advertisement itself, since ads are sold, but clients are serviced.  Segar, 508 F.3d at 22 (if the Court finds that a contract is not ambiguous, the interpretation of its plain language is a question of law).  Thus, Bush's argument that revenues from advertisements he secured for the Obama Presidential Campaign, Ford Motor Company, and Toyota should have been paid at the 5% rate as a New Account is unavailing because the advertising agencies that purchased the ads—Fuse, Uniworld, and Burrell—were already clients of NNPA well before the commencement of Bush's employment.  This plain meaning interpretation as "client" makes sense, because the goal of the contract is not only to incentivize Bush to keep the clients happy and to encourage them to place new ads, but to bring in altogether new clients, because that helps the business grow even more.

---

[4]  Webster's dictionary defines "account" as client or customer. *Webster's Ninth New Collegiate Dictionary* 50 (1991).

In addition, the Agreement defines New Accounts as those accounts that NNPA has not received receipts from before the start of the Agreement or accounts that NNPA has received new receipts from within one year before the date of the Agreement. There is no support in the contract language for Bush's proffered interpretation that new business generated from an existing account after years of inactivity qualifies as a New Account. Under the plain meaning of the Agreement, Fuse, Uniworld, and Burrell are not New Accounts because NNPA received receipts from these accounts before July 28, 2007. Bush is, therefore, entitled to a 2.5% commission rate on these accounts, and not the 5% rate that he received from NNPA.

## **CONCLUSION**

For the foregoing reasons, NNPA's Motion for Partial Summary Judgment is granted. An Order accompanies this Memorandum.

SO ORDERED.

Date: January 18, 2012

ROBERT L. WILKINS
United States District Judge